UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LYNN OLSEN, dba OLSEN AGRIPRISES;<br>CARR FARMS, LLC, a Washington<br>Limited Liability Company, | No. CV-06-5020-FVS |
| Plaintiffs, | SUMMARY JUDGMENT ORDER |
| v. | |
| UNITED STATES OF AMERICA, through<br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE AND FEDERAL CROP<br>INSURANCE CORP., | |
| Defendant. | |

**THIS MATTER** came before the Court for oral argument on the parties' cross motions for summary judgment. John G. Schultz appeared on behalf of the Plaintiffs. Rolf H. Tangvald appeared on behalf of the Defendant.

The Plaintiffs, Lynn Olsen and Carr Farms, LLC ("Carr"), brought this action to enforce two arbitration awards against the Federal Crop Insurance Corporation ("FCIC"), a division of the United States Department of Agriculture ("DOA"). The Court finds that the FCIC did not agree to submit to arbitration, being neither a party to the crop insurance policies at issue nor otherwise in privity of contract with the Plaintiffs. Given the dispute between the parties concerning the existence of an arbitration agreement, the arbitrators did not have jurisdiction to preside over the disputes between the parties. The arbitrators also proceeded to arbitrate the disputes in violation of a

SUMMARY JUDGMENT ORDER- 1

1  valid court order.  The Defendant's motion for summary judgment will

2  accordingly be granted, the Plaintiffs' denied, and the arbitration

3  awards vacated.

4      **BACKGROUND**

5      **REGULATORY FRAMEWORK**

6      Since 1996, the FCIC has acted primarily[1] as a reinsurer of crop

7  insurance policies issued by private insurance companies.  The FCIC

8  enters into cooperative financial agreements with private insurance

9  companies referred to as "Standard Reinsurance Agreements" ("SRAs").

10  In this capacity, the FCIC establishes the terms and conditions of the

11  insurance policies and subsidizes insurance rates.  7 U.S.C. §§ 1508;

12  1502(b)(2). The FCIC's reinsurance program is administered by the Risk

13  Management Agency ("RMA").  7 U.S.C. § 6933.

14      Subpart J of the FCIC's regulations governs appeals of "adverse

15  decisions made by personnel of the [FCIC] with respect to . . .

16  contracts of insurance of private insurance companies and reinsured by

17  the FCIC."  7 C.F.R. § 400.91.  An "adverse decision" is broadly

18  defined as, "a decision by an employee or Director of the Agency that

19  is adverse to the participant."  7 C.F.R. § 400.90.  Subpart J

20  provides that a participant may only seek judicial review of an

21  adverse determination after exhausting the available administrative

22  remedies.[2]  7 C.F.R. § 400.96(c).  Section 400.96(c) further provides,

23  _____

24      [1]In addition to reinsuring the policies of private insurers,
the FCIC offers insurance directly through local offices of the

25  DOA.  7 U.S.C. § 1508(a); 7 C.F.R. § 457.2(b).

26      [2]This Court has previously ruled that the Plaintiffs were
not required to exhaust their administrative remedies prior to
seeking review of the Agency's refusal to comply with the
SUMMARY JUDGMENT ORDER- 2

"Nothing in this section can be construed to create privity of contract between the Agency and a participant." *Id.*

**FACTUAL BACKGROUND**

The Plaintiffs owned and grew crops in 2001 and 2002. They purchased crop insurance policies called Adjusted Gross Revenue Pilot Insurance Policies ("the Policies") from American Growers Insurance Company ("AGIC"). AGIC entered into SRAs with the FCIC that were effective for 2001 and 2002. Pursuant to the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq.*, FCIC thereby became a reinsurer of the Plaintiffs' policies. The Policies specifically provide,

> "Throughout this policy, "you" and "your" refer to the named insured shown on the accepted application and "we," "us," and "our" refer to the insurance company providing insurance.

Declaration of William J. Murphy, October 10, 2007 ("Murphy Decl.") Ex. 1 at 1. The Policies indicate that, if AGIC could not pay a claim, the FCIC would pay the claim "in accordance with the provisions of this policy." Mem. Of Authorities In Supp. Of Mot. To Stay Civil Proceedings, Att. 1 ¶ 13. The Policies further provide,

> If you and we fail to agree on any factual determination, you may seek resolution of the disagreement. The disagreement will be resolved in accordance with the rules of the America Arbitration Association. Failure to agree with any factual determination made by the FCIC must be resolved through the FCIC appeal provisions published at 7 CFR Part 11.

*Id.*

In 2001 and 2002, the Plaintiffs sought to recover under the Policies for crop losses allegedly incurred in 2001 and 2002. Neither

arbitration awards. This conclusion was based on a statutory exception to the exhaustion requirement for questions of a purely legal nature. (Ct. Rec. 38.)

SUMMARY JUDGMENT ORDER- 3

Plaintiff could reach an agreement with AGIC concerning the amount due and both filed demands for arbitration in August of 2004.

On February 28, 2005, the State of Nebraska liquidated AGIC. Declaration of Donald A. Brittenham, October 10, 2007 ("Brittenham Decl.") Ex. 5. The Order of Liquidation provides, "No action in law or in equity or in arbitration, whether in this state or elsewhere, may be brought against AGIC or its liquidator, nor shall any existing actions be maintained or further presented after issuance of this Order of Liquidation." *Id.* ¶ 14. The FCIC notified the Plaintiffs of the liquidation and advised them that the FCIC would review their claims. Affidavit of John G. Schultz, April 26, 2007 ("Schultz Aff.") Ex. 5 at 63-64.

On June 16, 2005, John R. Zeimantz, the arbitrator appointed by the AAA for the Carr proceeding, issued an order indicating that the arbitration would proceed as scheduled. Schultz Aff. Ex. 6 at 72-73. Mr. Brittenham responded by letter on behalf of the FCIC. Brittenham Decl. Ex. 6 at 130-31. This communication explained that the arbitrator did not have jurisdiction over the FCIC, the FCIC had never agreed to participate in arbitration, and the FCIC had not waived its sovereign immunity. *Id.* at 20. Mr. Brittenham wrote to Mr. Zeimantz again on August 30 and reiterated that the FCIC did not recognize the AAA's jurisdiction. Brittenham Decl. Ex. 6 at 130-31.

On July 11, 2005, James Wagner, the arbitrator appointed by the AAA for the Olsen proceeding, substituted the FCIC for AGIC. Schultz Decl. Ex. 13 at 192-94. Mr. Brittenham again responded for the FCIC by letter, explaining that the arbitrator did not have jurisdiction over the FCIC, the FCIC had never agreed to participate in

SUMMARY JUDGMENT ORDER- 4

1   arbitration, and the FCIC had not waived its sovereign immunity.

2   Brittenham Decl. Ex. 7.

3       On September 20, 2005, Mr. Zeimantz held an evidentiary hearing

4   in the Carr case.  Brittenham Decl. Ex. 8.  On October 17, 2005, he

5   awarded Carr $ 2,969,341.  *Id.*  On August 22, 2005, Mr. Wagner held an

6   evidentiary hearing in the Olsen case.  Brittenham Ex. 9.  On

7   September 15, 2005, he awarded Olsen $477,114 for the 2001 crop year

8   and $2,608,699 for the 2002 crop year.  *Id.*  The arbitration awards

9   are the subject of the present litigation.

10      **DISCUSSION**

11  **I.   THE ARBITRATION CLAUSE IS NOT BINDING ON THE FCIC**

12      **A.   The FCIC Is Not a Party to the Arbitration Agreement**

13      "It is axiomatic that '[a]rbitration is a matter of contract and

14  a party cannot be required to submit any dispute which he has not

15  agreed so to submit.'"  *Sanford v. Member Works, Inc.*, 483 F.3d 956,

16  962 (9th Cir. 2007)(quoting *AT&T Tech., Inc. v. Commc'n Workers of*

17  *Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

18  Consequently, only disputes that the parties have agreed to submit to

19  arbitration may be so submitted.  *First Options v. Kaplan*, 514 U.S.

20  938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985, 992 (1995).

21  Issues concerning the existence of a contract or the existence of an

22  agreement to arbitrate are for the district court to decide.  *Sanford*,

23  483 F.3d at 962.  In ruling on such issues, the courts generally

24  "should apply ordinary state-law principles that govern the formation

25  of contracts."  *Kaplan*, 514 U.S. at 944, 115 S. Ct. at 1924, 131 L.

26  Ed. 2d at 993 (1995).

    Applying these principles, the Court finds that the FCIC was a

SUMMARY JUDGMENT ORDER- 5

party to neither the Policies nor the arbitration agreements they contain.  As the Defendant has argued, the Policies' preambles indicate that AGIC and the insured are the only parties to the contract.  While the FCIC is mentioned as a reinsurer, the FCIC's role and responsibilities are set forth in full in the SRA.  Thus, the Policies governed only the relationship between the Plaintiffs and AGIC; the FCIC's obligations as a reinsurer are governed by the SRA.

The Plaintiffs argue that the Policy held the FCIC out as a party by representing that the FCIC would "assume all obligations or unpaid losses" if AGIC was unable to fulfill its obligations.  However, the Plaintiffs cite no caselaw in support of the proposition that such a statement raises issues of equitable estoppel.  In addition, the analytical basis for this argument is insufficiently developed to be persuasive.

More importantly, there is no evidence before the Court that the FCIC ever agreed to arbitration.  Even if the FCIC could be considered a party to the Policies, Paragraph 13(a) indicates that the arbitration agreement was not meant to bind the FCIC.  Paragraph 13(a) explains that factual disagreements between the insured and AGIC will be resolved through arbitration.  It further explains that factual disagreements between the insured and the FCIC must be resolved through the administrative process.  As the Plaintiffs have remarked, Paragraph 13(a) does not specify the procedures that will govern in the event that, as in this case, AGIC becomes insolvent after a factual dispute has arisen.  However, the distinction Paragraph 13(a) draws between the procedures that will govern disputes involving AGIC and the procedures that will govern disputes involving the FCIC

SUMMARY JUDGMENT ORDER- 6

indicates that the FCIC did not agree to enter into arbitration.

**B.    The FCIC Is Not In Privity of Contract With the Plaintiffs**

**1.    Privity in general**

The Defendant argues that the Plaintiffs lack standing to sue the FCIC because they are not in privity of contract with the FCIC.  While the Court agrees that the Plaintiffs lack privity of contract with the FCIC, the Court is not persuaded that the Plaintiffs necessarily lack standing to bring suit.  It is true that, as a general rule, "there is no privity of contract that would enable the original insured to bring an action against the reinsurer." *Litho Color, Inc. v. Pacific Employer's Ins. Co.*, 98 Wn. App. 286, 301-02, 991 P.2d 638, 646 (Wash. Ct. App. 1999).  However, the general rule has its exceptions and the Defendant has not justified its assertion that the general rule applies in this case.

Moreover, the Plaintiffs have argued that the relationship between themselves and the FCIC can not be properly qualified as "reinsurance" for the purposes of state law.  The Court, therefore, declines to rule on the question of standing in this instance.

The Defendant is correct that neither the Policies nor the SRA establish a contractual relationship between the Plaintiffs and the FCIC.  The Plaintiffs entered into an agreement with AGIC and AGIC entered into an agreement, the SRA, with the FCIC.  Section 400.96 negates the Plaintiffs' contention that the Policy and the SRA established privity of contract.  This provision indicates, "Nothing in this section can be construed to create privity of contract between the Agency and a participant."  7 C.F.R. § 400.96(c).  Reading this statement in context, it is clear that the act of filing a lawsuit

SUMMARY JUDGMENT ORDER- 7

pursuant to the FCIC's regulations does not, by itself, create
privity.  It would not be necessary for the regulation to address the
effect of a lawsuit on privity if, as the Plaintiffs argue, privity
existed solely by virtue of the FCIC's role as reinsurer.

The Plaintiffs contention that Subpart J is inapplicable to the
present action is unavailing.  The Plaintiffs are correct that Subpart
J would not apply to an appeal of AGIC's determinations.  However, as
this Court's Order Denying Motion to Stay, Ct. Rec. 38, made clear,
the Plaintiffs' action before this Court is not an appeal of AGIC's
factual findings.  Rather, it is a challenge to the FCIC's refusal to
recognize the arbitration awards.  Given Subpart J's broad definition
of "adverse action," Subpart J applies to the present litigation.

### 2.    Substituted insurance versus reinsurance

As a general rule, "reinsurance" properly refers to the
relationship that exists when one insurance company, the reinsurer,
agrees to indemnify another insurance company, the insurer, against a
portion of the losses that the insurer may incur in connection with a
policy.  14 Eric Mills Holmes & L. Anthony Sutton, Appleman on
Insurance § 109.1 (2d Ed. 1999.)  When a so-called reinsurer assumes
direct liability to the policy holder, the relationship is properly
characterized as "substituted insurance" rather than reinsurance.  *Id*.

The Plaintiffs argue that the FCIC is in privity of contract with
the Plaintiffs because the FCIC provided substitute insurance rather
than reinsurance.  However, federal law preempts the application of
this principle to the present situation.  The FCIC's regulations
preempt state and local law to the extent that they conflict with the

SUMMARY JUDGMENT ORDER- 8

statute and regulations governing the FCIC.  7 U.S.C. § 1506(l).[3]
Likewise, inconsistent state and local laws are inapplicable to the
contracts of the FCIC.  *Id.*; 7 C.F.R. § 400.352(a).  The federal
regulations governing the FCIC refer to "reinsurance," rather than
"substituted insurance."  Section 400.96 also indicates that, however
the relationship between a participant and the FCIC might be
described, the mere existence of that relationship does not create
privity of contract between an insured and the FCIC.  The creation of
privity via state contract or insurance law would be inconsistent with
these regulations.  Consequently, federal law prohibits the inference
that the FCIC provided substitute insurance.

## II.  THE ARBITRATION AWARDS MUST BE VACATED

### A.    The Arbitrators Lacked Jurisdiction

The Federal Arbitration Act ("FAA" or "the Act") acknowledges the
validity of arbitration agreements and establishes a liberal federal
policy in favor of their enforcement.  *Lozano v. AT&T Wireless Servs.*,
504 F.3d 718, 725 (9th Cir. 2007)(citing *Moses H. Cone Mem. Hosp. v.
Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d
765 (1983)).  Consistent with this policy, the Act authorizes the

---

[3] 7 U.S.C. § 1506(l) provides,

> The Corporation may enter into and carry out contracts
> or agreements, and issue regulations, necessary in the
> conduct of its business, as determined by the Board. State
> and local laws or rules shall not apply to contracts,
> agreements, or regulations of the Corporation or the parties
> thereto to the extent that such contracts, agreements, or
> regulations provide that such laws or rules shall not apply,
> or to the extent that such laws or rules are inconsistent
> with such contracts, agreements, or regulations.

SUMMARY JUDGMENT ORDER- 9

parties to an arbitration agreement to petition the district court to compel arbitration in appropriate circumstances.  9 U.S.C. § 4.  The court must direct the parties to arbitrate the dispute as set forth in their agreement "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.*  If, however, "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."  *Id*.

An arbitrator's authority to adjudicate a dispute is derived solely from the agreement of the parties.  *Three Valleys Municipal Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991).  He or she "has no independent source of jurisdiction apart from the consent of the parties."  *I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396, 399 (9th Cir. 1986).  Consequently, the question of whether a particular party entered into a contract containing an arbitration agreement "must first be determined by the court as a prerequisite to the arbitrator's taking jurisdiction."  *Id.*; *Sanford*, 483 F.3d at 962.  Similarly, challenges to the validity of an agreement to arbitrate must be resolved by a court.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444, 126 S. Ct. 1204, 1208, 163 L. Ed. 2d 1038, 1043 (2005).  In contrast, the validity of a contract that contains an arbitration clause is a question for the arbitrator.  *Buckeye*, 546 U.S. at 449, 126 S. Ct. at 1210, 163 L. Ed. 2d at 1046.

The Court holds that the arbitrators did not have jurisdiction to determine the effectiveness of the arbitration agreement against the FCIC.  As explained above, an arbitrator's jurisdiction is premised on

SUMMARY JUDGMENT ORDER- 10

the agreement of two or more parties to arbitrate a dispute.  Both the Ninth Circuit and the FAA indicate that a court must decide whether such an agreement exists in the first instance.  An arbitrator does not have the authority to decide this issue for him or herself.  Here, the arbitrators assumed jurisdiction and proceeded to arbitrate the disputes without the benefit of a court decision.  The arbitration awards are therefore invalid and will be vacated.

**B.    The Arbitrators Proceeded with Arbitration In Violation of State Law**

The Nebraska court's Order of Liquidation expressly prohibited the continuation of any arbitration proceeding that had been previously brought against AGIC.  Contrary to the Plaintiffs' contention, this order was not preempted by federal law.  As the Defendant has argued, the Act and the FCIC's regulations only preempt state law to the extent that it is inconsistent with federal law. Here, the SRA provides for the immediate transfer of the crop insurance policies to the FCIC in the event that AGIC is "unable to fulfill [its] obligations" to any policyholder by reason of a directive or order duly issued by . . . any court of law having competent jurisdiction."  The SRA thus not only contemplates that a state court order might impair AGIC's ability to meet its obligations, such an order is a prerequisite to the SRA's effectiveness.  Given the validity of the Nebraska court's order, this Court is persuaded that the Plaintiffs and the arbitrators proceeded to arbitration in violation of a valid court order.

**C.    The Defendant Did Not Waive Its Objection to Arbitration**

It is well established that a party who has voluntarily

SUMMARY JUDGMENT ORDER- 11

participated in arbitration waives any challenge he or she may have had to the arbitrator's authority.  *See Nagrampa v. MailCoups*, *Inc.*, 469 F.3d 1257, 1279 (9th Cir. 2006)(citing cases).  However, when a party "forcefully objected to arbitrability at the outset of the dispute, never withdrew that objection, and did not proceed to arbitration on the merits of the contract claim," waiver does not occur.  *Id.* at 1280.

The Court finds that the FCIC did not waive its challenges to the arbitrators' authority.  The FCIC's letters to Mr. Zeimantz and Mr. Wagner clearly state that the FCIC does not recognize the AAA's jurisdiction over the cases and "will not be bound by any future award in this case."  Brittenham Decl. Ex. 6; Brittenham Decl. Ex. 7.  The letters further advised the arbitrators that the FCIC would not participate in arbitration.  While the letters do mention the legal basis for the FCIC's refusal to arbitrate, neither amounts to a substantive legal argument that could be considered an appearance.  Each letter is less than two pages in length and neither relies upon legal citations.  The letters are intended to inform the arbitrators of the FCIC's position and create a record of its objections.  They do not rise to the level of involvement that the Ninth Circuit has found to constitute waiver.  *See Nagrampa*, 469 F.3d at 1279 (citing cases).  The Court being fully advised,

**IT IS HEREBY ORDERED**,

1. The Defendant's Motion For Summary Judgment, and, Alternatively to Vacate Arbitration Awards, **Ct. Rec. 43**, is **GRANTED**.

2. The Plaintiffs' Motion For Summary Judgment, **Ct. Rec. 13**, is **DENIED**.

SUMMARY JUDGMENT ORDER- 12

3. The arbitration award of October 17, 2005 in the amount of two million, nine hundred sixty-nine thousand, three hundred and forty-one dollars ($2,969,341) that Mr. Zeimantz awarded to Carr, American Arbitration Association, 75 430 Y 00351 04 DEAR, is **VACATED.**

4. The arbitration award of September 15, 2005, in the amount of four hundred seventy-seven thousand one hundred and fourteen dollars ($477,114) for the 2001 crop year and two million six hundred eights thousand six hundred sixty-nine dollars ($2,608,669) for the 2002 crop year that Mr. Wagner awarded to Mr. Olsen, American Arbitration Association, Commercial Arbitration Tribunal, 75 430 Y 00340 04 DEAR, is **VACATED**

5. The District Court Executive shall **ENTER JUDGMENT** in favor of the Defendant.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order, furnish copies to counsel, and **CLOSE THE FILE.**

**DATED** this   10th   day of March, 2008.

                    s/ Fred Van Sickle
                    Fred Van Sickle
                    United States District Judge

SUMMARY JUDGMENT ORDER- 13